IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAUDI LOGISTICS AND TECHNICAL SUPPORT, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-142C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS**


GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARTIN F. HOCKEY, JR.
Assistant Director

DAVID S. SILVERBRAND
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-3278
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

TOSHENE FLETCHER
MAJ, JA
Office of the Judge Advocate General
United States Army


August 22, 2008

# TABLE OF CONTENTS

INTRODUCTION .......... 1

STATEMENT OF FACTS. .......... 1

SUMMARY OF ARGUMENT. .......... 2

ARGUMENT. .......... 3

I. Standard Of Review. .......... 3

II. The Contracting Officer Issued A Valid Final Decision. .......... 4

A. The Contracting Officer's Final Decision Complied With The CDA. .......... 5

B. The Contracting Officer's Final Decision Complied With The FAR .......... 7

1. The Final Decision Is In Accordance With 48 C.F.R. § 33.211(a). .......... 8

2. 48 C.F.R. §§ 4.801 And 15.407-1 Are Not Relevant Here. .......... 13

CONCLUSION. .......... 13

# TABLE OF AUTHORITIES

## CASES

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998)........................................................................ 3

Alliant Techsystems, Inc. v. United States,
178 F.3d 1260 (Fed. Cir. 1999)........................................................................ 8, 13

Connor Brothers Construction Co. v. United States,
65 Fed. Cl. 657 (Fed. Cl. 2007). ...................................................................... 11

Daewoo Engineering & Construction Co. v. United States,
73 Fed. Cl. 547 (Fed. Cl. 2006). ...................................................................... 12

Embrey v. United States,
17 Cl. Ct. 617, 628 (Cl. Ct. 1989)..................................................................... 11

Harbuck v. United States,
58 Fed. Cl. 266 (2003) , aff'd, 378 F.3d 1324 (Fed. Cir. 2004). ....................................... 4

Haustechnik v. United States,
34 Fed. Cl. 740 (Fed. Cl. 1996). ...................................................................... 4

J.A. Terteling & Sons, Inc. v. United States,
390 F.2d 926 (Ct. Cl. 1968). ........................................................................... 10, 11

Johnson Controls World Services, Inc. v. United States,
43 Fed. Cl. 589 (Fed. Cl. 1999). ...................................................................... 4

Lavezzo v. United States,
74 Fed. Cl. 502 (Fed. Cl. 2006). ...................................................................... 9

Lewis v. United States,
32 Fed. Cl. 59 (1994). ..................................................................................... 4

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936)........................................................................................ 3

New York Shipbuilding Corporation v. United States,
385 F.2d 427 (Ct. Cl. 1967). ........................................................................... 11, 12

Pacific Architects & Engineers Inc. v. United States,
491 F.2d 734 (Ct. Cl. 1974). ........................................................................... 10, 11

Placeway Construction Corp. v. United States,
920 F.2d 903 (Fed. Cir. 1990)........................................................................ passim

Rocovich v. United States,
933 F.2d 991 (Fed. Cir. 1991)............................................................................... 4

Scheuer v. Rhodes,
416 U.S. 232 (1974)................................................................................................ 4

Sharman Co. v. United States,
2 F.3d 1564 (Fed. Cir. 1993).................................................................................. 4

SMS Data Products, Inc. v. United States,
19 Cl. Ct. 612 (Cl. Ct. 1990).................................................................................. 6

Teller Environmental Systems v. United States,
802 F.2d 1385 (Fed. Cir. 1986)............................................................................... 8

## STATUTES

41 U.S.C. § 605.......................................................................................................... passim

## REGULATIONS

48 C.F.R. §§ 4.801.......................................................................................................... 3, 13

48 C.F.R. § 33.211.......................................................................................................... passim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAUDI LOGISTICS AND TECHNICAL SUPPORT, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-142C |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS**

Defendant, the United States, respectfully submits this response in opposition to the motion to dismiss filed by plaintiff, Saudi Logistics and Technical Support ("SALTS").

**INTRODUCTION**

In its motion, SALTS requests that the Court dismiss the Government's counterclaim for lack of subject matter jurisdiction. In its motion, SALTS contends that the contracting officer failed to state the reasons for her decision and, thus, did not issue a valid final decision necessary for this Court to entertain jurisdiction. As we demonstrate below, the contracting officer complied with the statutory requirements for making a valid final decision and, thus, this Court possesses subject matter jurisdiction to entertain this action. Thus, we respectfully request that the Court deny SALTS's motion.

**STATEMENT OF FACTS**

In 1995, the United States Army Aviation and Missile Command ("AMCOM") entered into Basic Ordering Agreement ("BOA") DAAH01-96-G-0001. Compl. ¶ 4. On September 14, 1999, AMCOM issued an undefinitized contract action Delivery Order 0004 against BOA DAAH01-96-G-0001 to SALTS for the fabrication, testing, delivery, and integration of PATRIOT

Air Defense System Prime Power Sets in Support of the Kingdom of Saudi Arabia, Royal Saudi Air Defense Forces. Id. ¶ 29.

Subsequently, on September 19, 2002, the Defense Contract Audit Agency ("DCAA") completed Audit Report No. 2191-2001S42000002 on Delivery Order 0004, concluding that Delivery Order 0004 contained overstated contract costs resulting from SALTS's failure to disclose information in its Certificate of Current Cost or Pricing Data dated February 29, 2000. Id. ¶ 42. The audit report recommends a subcontract cost adjustment of $5,054,953 and a $2,324,229 price adjustment resulting from applying overhead, general, and administrative expense, and profit rates to the overstated amount. Pl. Br. at 3 (citing Audit Report).

On April 14, 2003, the AMCOM contracting officer sent a letter to SALTS requesting a price adjustment to the contract to cover the overstated subcontracting costs discovered in the audit. Pl. Compl. ¶ 45. On August 6 and August 25, 2003, SALTS responded to AMCOM's request for a pricing adjustment and provided its rebuttal to the recommendations in the audit report.

On March 14, 2007, AMCOM issued a demand letter/final decision holding SALTS liable for defective pricing and demanding payment of excess profits of $7,379,180 and interest due through March 31, 2007, in the amount of $3,126,896, for a total amount due of $10,506,076. Pl. Br. at 2; Countercl. ¶ 7; Pl. App. 1. The March 14, 2007 demand letter/final decision also informed SALTS that interest charges will accrue "at the approximate rate of $1,536.56 per day, until paid." Id.

## SUMMARY OF ARGUMENT

Contrary to SALTS's contentions, the contracting officer's final decision complied with

all statutory and regulatory requirements necessary to confer jurisdiction over the subject matter of this case upon the Court. The basis for the contracting officer's final decision is that the post award audit revealed defective pricing and improper payments made to SALTS. Thus, in her final decision, the contracting officer demanded payment of excess profits of $7,379,180 and interest due through March 31, 2007 in the amount of $3,126,896, for a total amount due of $10,506,076. This description provided SALTS with a reason for the decision reached in accordance with 41 U.S.C. § 605(a).

Additionally, the contracting officer's final decision is in accordance with the Federal Acquisition Regulations ("FAR") because it determined both liability and damages. The United States Court of Appeals for the Federal Circuit has held that a final decision need not contain standard language announcing that it constitutes a final decision so long as it contains language announcing that it constitutes a final decision and determines both liability and damages. In any case, in her final decision, the contracting officer provided the supporting rationale for her decision when she indicated that, due to defective pricing, SALTS had received excess profits and, therefore, AMCOM is demanding repayment of those profits. Finally, contrary to SALTS's contentions, 48 C.F.R. §§ 4.801 and 15.407-1(d), are not relevant to the determination of whether the contracting officer issued a final decision because a contracting officer's decision asserting a Government claim is final if it determines both liability and damages.

## ARGUMENT

### I. Standard Of Review

The party seeking to exercise this Court's power bears the burden of establishing jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Alder

Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998). When deciding a motion to dismiss based upon lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), this Court assumes all undisputed facts alleged are true and must draw all reasonable inferences in the non-movant's favor, here the United States. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). If the undisputed facts reveal any possible basis upon which the non-moving party might prevail, the Court must deny the motion to dismiss. Id. If, however, the motion challenges the truth of the jurisdictional facts alleged, the Court may consider relevant evidence in order to resolve the factual dispute. Harbuck v. United States, 58 Fed. Cl. 266, 267 (2003) (citing Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991); Lewis v. United States, 32 Fed. Cl. 59, 62 (1994)), aff'd, 378 F.3d 1324 (Fed. Cir. 2004).

In order for this Court to exercise jurisdiction over a claim pursuant to the Contract Disputes Act of 1978 ("CDA"), a Government contracting officer must have made a "valid final decision" on the claim. Johnson Controls World Services, Inc. v. United States, 43 Fed. Cl. 589, 592 (Fed. Cl. 1999); see Sharman Co. v. United States, 2 F.3d 1564, 1569 n.6 (Fed. Cir. 1993) ("[A] final decision by the contracting officer on a claim . . . is a 'jurisdictional prerequisite' to further legal action thereon."). "The requisites of a 'final decision,' in turn, are set out in the CDA and the Federal Acquisition Regulations . . . ." Haustechnik v. United States, 34 Fed. Cl. 740, 743 (Fed. Cl. 1996).

## II. The Contracting Officer Issued A Valid Final Decision

SALTS contends that the contracting officer did not comply with the requirements for a valid final decision set forth in the CDA and FAR because she "never provided the reasons for her

decision." Pl. Br. at 10 (emphasis removed). Contrary to SALTS' contentions and as we demonstrate below, the contracting officer's final decision complied with all statutory and regulatory requirements necessary to confer jurisdiction over the subject matter of the Government's counterclaim upon the Court.

### A. The Contracting Officer's Final Decision Complied With The CDA

Pursuant to section 605(a), a contracting officer "shall state the reasons for the decision reached" when making a final decision upon a government contract claim. 41 U.S.C. § 605(a); Placeway Constr. Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990) (a contracting officer's decision asserting a government claim is final if it determines both liability and damages).

SALTS contends that the contracting officer did not comply with 41 U.S.C. § 605(a), because she "never provided the reasons for her decision." Pls. Br at 10. Contrary to SALTS contention, however, the March 14, 2007 letter the contracting officer sent to SALTS sets forth the reasons for the decision reached, in accordance with 41 U.S.C. § 605(a). Pls. App. 1. The basis for the contracting officer's final decision is set forth in March 14, 2007 letter sent to SALTS: "The post award audit revealed that due to defective pricing, payments were made to you through contract completion. . . . This is the final decision of the Contracting Officer." Pl. App. 1; see Def. App. 1 at 16 (listing SALTS as a recipient of the Audit Report). Thus, in her final decision, the contracting officer determined that, "[p]ursuant to the terms and conditions outlined in the contract, and in accordance with FAR 32.610, the Government hereby makes a demand for payment of excess profits of $7,379,180 and interest due through March 31, 2007 in the amount of $3,126,896, for a total amount due of $10,506,076." Pls. App. 1.

In addition, the contracting officer referenced the Defense Contract Audit Agency's Audit Report No. 2191-2001S42000002 ("Audit Report") in the opening line of her letter. Pl. App. 1. The Audit Report is an eighteen-page document that detailed SALTS' defective pricing practices and included SALTS' written response to the report. Def. App. 1. In the Audit Report, DCAA determined that SALTS failed to disclose its actual incurred exchange rates on contract costs and, therefore, recommended a price adjustment against SALTS of $7,379,182. Id. The contracting officer made two references to these findings in her final decision letter and made a demand for $7,379,180, plus interest. Pl. App. 1. Thus, the final decision provided SALTS with a "reason[] for the decision reached," in accordance with 41 U.S.C. § 605(a).

SALTS relies upon SMS Data Products, Inc. v. United States, 19 Cl. Ct. 612 (Cl. Ct. 1990), for the proposition that the CDA was meant to encourage the resolution of contract disputes by negotiation prior to litigation and the contracting officer, thus, "deprived [SALTS] of the opportunity to seek a negotiated settlement prior to litigation." Pl. Br. at 15-16. SALTS's contention is without merit. In SMS, while examining the conditions Congress placed upon the Government's waiver of sovereign immunity pursuant to the CDA, the Court of Claims held that "Congress required contractors to file all claims with the contracting officer to provide the Government with an opportunity to settle the case or otherwise avoid unnecessary litigation." 19 Cl. Ct. at 614. The United States Court of Claims went on to hold that, because the plaintiff did not claim lost profits, "the contracting officer's decision naturally denied only the request for compensatory relief. Absent a claim for lost profits before the contracting officer and a subsequent decision, this court lacks jurisdiction" over the plaintiff's lost profit claims. Id. at 615. Nothing in SMS supports SALTS's contention that it "has been deprived of the opportunity

to seek a negotiated settlement . . . ." Pl. Br. at 16. In fact, as stated above, SALTS' response to the Audit Report and its positions are set forth in full in the Audit Report upon which the contracting officer's final decision is based. The contracting officer was not required by law to respond to SALTS' arguments and SALTS was in no way deprived of an opportunity to negotiate. SALTS had full information about the contracting officer's decision, and even its responses to the DCAA Audit Report were included in the Report referenced in the decision. See Def. App. 1 at 6-7, 18.

Similarly, SALTS' contention that it did not "understand the strengths and weaknesses of its case before having to commit significant resources to litigation" and that it "has been forced to make the decision to litigate without the benefit of the required statement of reasons for the 'final decision,'" is baseless. Pl. Br. at 17. As demonstrated above, SALTS replied in writing to the DCAA's findings and its submissions were included in the Audit Report, upon which the contracting officer made her final decision. Def. App. 1 at 6-7, 18; Pl. App. 1. Nothing in 41 U.S.C. § 605a requires specific findings of fact to be contained within a contracting officer's final decision.

For these reasons, the contracting officer's final decision complied with 41 U.S.C. § 605(a).

### B. The Contracting Officer's Final Decision Complied With The FAR

SALTS contends that the contracting officer did not comply with the FAR's requirements that the contracting officer include "a statement of the factual areas of agreement and disagreement [and] the supporting rationale for the Contracting Officer's decision." Pl. Br. at 12 (citing 48 C.F.R. § 33.211(a)(4)). Additionally, SALTS contends that the contracting officer did

not meet the obligations triggered by the receipt of an audit report indicating defective pricing. Id. at 13-14. As we demonstrate below, SALTS's contentions are unavailing.

### 1. The Final Decision Is In Accordance With 48 C.F.R. § 33.211(a)

Pursuant to 48 C.F.R. § 33.211(a)(4), the contracting officer shall prepare a written decision that shall include, in relevant part, "[a] statement of the factual areas of agreement and disagreement;" and "[a] statement of the contracting officer's decision, with supporting rationale . . . ." "Any failure of the contracting officer to issue a decision within the required time periods will be deemed a decision by the contracting officer denying the claim and will authorize the contractor to file an appeal or suit on the claim." 48 C.F.R. § 33.211(g).

SALTS contends that the contracting officer's final decision "does not, in this case, reflect her own independent determination." Pl. Br. at 13. SALTS's contention is without merit.

A contracting officer's decision asserting a Government claim is final if it determines both liability and damages. Placeway, 920 F.2d at 907 (Fed. Cir. 1990) (a contracting officer's decision asserting a Government claim is final if it determines both liability and damages); Teller Environmental Systems v. United States, 802 F.2d 1385, 1388-89 (Fed. Cir. 1986) (same). The Federal Circuit has held that a "final decision" need not contain "standard language announcing that it constitutes a final decision" and has allowed a letter that did not give appeal rights, but stated that a contractor's contractual interpretation was wrong and directed the contractor to continue working, constituted a final decision. Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1267-68 (Fed. Cir. 1999) (citing Placeway, 920 F.2d at 907). Because SALTS can not dispute that the contracting officer's final decision contains language announcing that it constitutes a final decision and determined both liability and damages, SALTS's contentions that

the contracting officer's final decision is not valid, are without basis. See Placeway, 920 F.2d at 906 (contracting officer's decision was final even though it did not contain the label "final decision" and failed to provide the contractor with notice of its appeal rights as required by FAR 33.211(a)).

In any case, even if more were required than a determination of liability and damages, in her final decision, the contracting officer provided the "supporting rationale" for her decision when she indicated that, "due to defective pricing," SALTS had received "excess profits" and, therefore, AMCOM is demanding repayment of those profits. Pl. App. 1. As further "supporting rationale," the contracting officer made two references in her letter to the Audit Report, which gave a detailed description of SALTS' defective pricing practices. Id.; Def. App. 1 at 4-6. Thus, the rationale for Ms. Davis's decision was clear.

By referencing the Audit Report, the contracting officer's final decision also provided SALTS with a "statement of the factual areas of agreement and disagreement," pursuant to 48 C.F.R. § 33.211(a)(4). The Audit Report provides a detailed factual background of the case before explaining its recommendation that SALTS repay the losses incurred due to SALTS's defective pricing. Def. App. 1 at 4-6. The Audit Report then includes a section titled "Contractor's Reaction," where SALTS's disagreements with the Audit are set forth, along with the "Auditor's Response" to SALTS's comments. Id. Finally, the Audit Report appended the original e-mail from SALTS that conveyed its disagreements. Id.

Although SALTS correctly quotes this Court's holding that "final decisions on contract claims ought to reflect the independent determination of the contracting officer," Pl. Br. at 12 (quoting Lavezzo v. United States, 74 Fed. Cl. 502, 504 (Fed. Cl. 2006)), SALTS has failed to

demonstrate that the contracting officer's final decision at issue here does not represent her personal and independent review of the dispute. In Lavezzo, this Court held a contracting officer's decision invalid after the contracting officer's agency supervisor, who was not a contracting officer himself, interfered with the contracting officer's decision process. SALTS has no basis to allege any similar interference in this case. Thus, the holding of Lavezzo is not relevant.

Moreover, Government counsel are unaware of any basis upon which SALTS can argue that a contracting officer may not rely upon a DCAA audit report in making her final decision. Nor are we aware of any basis upon which a contracting officer should be required to restate the results of complex investigations or calculations rather than referencing those results in her final decision. Indeed, there is "no implied prohibition against [a contracting officer] first obtaining or even agreeing with the views of others" before giving her final decision. Pacific Architects & Engineers Inc. v. United States, 491 F.2d 734, 744 (Ct. Cl. 1974).

In Pacific Architects, the Court of Claims held that "it would have to be assumed that the contracting officer like any other officer of the United States would do his best to follow the requirements of law. It was contemplated that after receiving recommendations, legal opinions and advice, 'in the end he put his own mind to the problems and render his own decisions.'" Id. Similarly, in J.A. Terteling & Sons, Inc. v. United States, 390 F.2d 926 (Ct. Cl. 1968), the plaintiff offered evidence that the contracting officer's decision was prepared by a subordinate and adopted by the contracting officer without change. The Court of Claims held that "this is not enough of a showing to call for further inquiry into the question whether the contracting officer 'put his own mind to the problems and render(ed) his own decisions.' In the absence of further

significant proof . . . we must assume that the contracting officer did his duty." Id. at 927 (citation omitted).

SALTS has not provided a basis for its contention that the contracting officer's "decision does not reflect her own independent analysis, reasoning, or determination." Pl. Br. at 15; see id. at 13, 19; Embrey v. United States, 17 Cl. Ct. 617, 628 (Cl. Ct. 1989) ("In the absence of clear evidence to the contrary, it must be presumed that the contracting officer . . . acted conscientiously in the discharge of their duties. . . . Plaintiff must do more than make bold allegations . . . ."); see generally Connor Brothers Construction Co. v. United States, 65 Fed. Cl. 657, 694 (Fed. Cl. 2007) ("There is a presumption that public officers preform their duties correctly, fairly, and in good faith, and in accordance with the law and governing regulations.") (citing Alaska Airlines v. Johnson, 8 F.3d 791, 795 (Fed. Cir. 1993)). As demonstrated above, the contracting officer issued a valid final decision in her March 14, 2007 letter by stating the reason for her decision in her own language in the letter and providing SALTS with more information through reference to the DCAA report. Pl. App. 1. SALTS provides no evidence that the contracting officer did not make her own decision, and does not suggest who or what interfered with the contracting officer's decision making.

SALTS' reliance upon New York Shipbuilding Corporation v. United States, 385 F.2d 427 (Ct. Cl. 1967), and Pacific Architects for the proposition that the contracting officer's final decision did not represent her independent judgment is without merit. Pl. Br. at 12-13. As stated above, in Pacific Architects, the Court of Claims held that there is "no implied prohibition against [a contracting officer] first obtaining or even agreeing with the views of others" before giving her final decision. 491 F.2d at 744. Similarly, in New York Shipbuilding, the Court of Claims held

that where the parties explicitly contracted for a particular Government official to be the contracting officer, another official could not make a valid decision in his place. SALTS has no basis to contend that another official has taken the place of the contracting officer here. Indeed, the court in New York Shipbuilding recognized that "[i]t may be that, in some instances, the 'reality' is that the designated individual merely rubber-stamps a subordinate's or superior's findings . . . ." 385 F.2d at 486. Here, advice from the DCAA likewise does not invalidate Ms. Davis's decision.

Similarly, SALTS' contention that the contracting officer's "'final decision' . . .does not provide any indication or explanation concerning whether and, if so, why she rejected the seven grounds submitted in support of SALTS' contention of no defective pricing," is unavailing. Pl. Br. at 6. SALTS does not cite any law that would impose such a burden upon a contracting officer. As demonstrated, the contracting officer's final decision meets the statutory and regulatory requirements in this case.

Finally, SALTS' contention that the contracting officer "has engaged in gamesmanship by ignoring SALTS' opposition to the Audit Report," is without merit. Id. at 19-20. SALTS provides no basis for this contention. Indeed, Daewoo Engineering & Construction Co. v. United States, 73 Fed. Cl. 547 (Fed. Cl. 2006), upon which SALTS relies is not relevant here. See Pl. Br. at 19. In Daewoo, this Court found that the plaintiff "did not present a clear legal theory to support its large claim against the Government" and reasoned that the plaintiff may have made a claim against the Government with the hope that the Government would negotiate instead of litigating. Daewoo, 73 Fed. Cl. at 569. In the present action, unlike Daewoo, the theory of the United States's decision against SALTS is clear: the contracting officer and the DCAA Audit

Report both determined that SALTS had used defective pricing resulting in excess profits. The United States is not attempting to engage in "gamesmanship" with SALTS, but rather to collect SALTS' excess profits.

**2. <u>48 C.F.R. §§ 4.801 And 15.407-1 Are Not Relevant Here</u>**

Contrary to SALTS' contentions, 48 C.F.R. §§ 4.801 and 15.407-1(d), are not relevant to the determination of whether the contracting officer issued a final decision. Pl. Br. at 13-15. SALTS does not provide a basis for its contention that, in order to be valid, the contracting officer's final decision must "provide SALTS with a memorandum documenting her response to and agreement or rejection of the seven reasons in SALTS letter of August 6, 2003 . . . ." Pl. Br. at 14-15. As we demonstrated above, a contracting officer's decision asserting a Government claim is final if it determines both liability and damages. <u>Placeway</u>, 920 F.2d at 907; <u>Alliant</u>, 178 F.3d at 1267-68. Because the contracting officer's decision determined both liability and damages here, whether the contracting officer provided a memorandum pursuant to 48 C.F.R. § 15.407-1 is not relevant to whether the decision is final for purposes of this Court's jurisdiction over the subject matter of this action. Similarly, and for the same reasons, 48 C.F.R. § 4.801 has no relevance to whether the contracting officer's final decision confers jurisdiction upon this Court.

**<u>CONCLUSION</u>**

For these reasons, we respectfully request that the Court deny SALTS's motion to dismiss.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Stephen J. Gillingham for
MARTIN F. HOCKEY, JR.
Assistant Director

OF COUNSEL:

TOSHENE FLETCHER
MAJ, JA
Office of the Judge Advocate General
United States Army

/s/ David S. Silverbrand
DAVID S. SILVERBRAND
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-3278
Fax: (202) 353-7988

August 22, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 22nd day of August, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David S. Silverbrand