**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SAUDI LOGISTICS AND TECHNICAL SUPPORT,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO. 1:08-CV-00142-NBF** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

# REPLY BRIEF IN SUPPORT OF SAUDI LOGISTICS AND TECHNICAL SUPPORT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

**ATTORNEYS OF RECORD:**

**Roderic G. Steakley**
**Matthew B. Reeves**
**SIROTE & PERMUTT, P.C.**
305 Church Street Suite 800
P.O. Box 18248
Huntsville, Alabama 35804-8248
Telephone: (256) 536-1711
Facsimile: (256) 518-3681
Email: rsteakley@sirote.com
mreeves@sirote.com

**OF COUNSEL:**
**Jerome S. Gabig, Jr.**
515 Sparkman Drive
Huntsville, Alabama 35816
Telephone: (256) 509-0279
Facsimile: (256) 704-6002
Email: gabig3@comcast.net

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION. .... 1

II. CHRONOLOGY OF EVENTS. .... 1

III. ARGUMENT IN REPLY. .... 4

A. The Contracting Officer's Letter Of March 14, 2007 Failed To Comply With The 41 U.S.C. § 605(a) Requirements, Including the Requirement That The Final Decision "State The Reasons For the Decision Reached." .... 4

B. The Contracting Officer's Letter Of March 14, 2007 Fails To Comply With The FAR's Implementation Of The CDA, Which Requires The Final Decision To (1) State the Factual Areas Of Agreement And Disagreement, and (2) Provide Supporting Rationale For The Decision. .... 9

C. The Government's Notion That The Requirement In 41 U.S.C. § 605(a) To "State The Reasons For The Decision Reached" Requires Only A Cursory Response Is Inconsistent With The Intent Of The CDA To Create An Administrative Record. .... 12

D. The Contracting Officer Did Not Put Her "Own Mind To The Problem And Take Ownership Of All Determinations." .... 15

E. The Government's Argument That "SALTS Has Not Provided A Basis For Its Contention That The Contracting Officer's Decision does not Reflect Her Own Independent Analysis, Reasoning, Or Determination" Cannot Withstand Scrutiny. .... 19

IV. CONCLUSION. .... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

CEMS, Inc. v. United States, 65 Fed. Cl. 473 (2005) ..... 15

England v. Sherman R. Smoot Corp., 388 F.3d 844 (Fed. Cir. 2004) ..... 4

John A. Johnson Contracting Corp. v. United States, 132 Ct. Cl. 645, 132 F. Supp. 698 (1955) ..... 4

New York Shipbuilding Corporation v. United States, 180 Ct. Cl. 446 (1967) ..... 12, 13, 14, 15

Northrop Grumman Information Technology, Inc. v. United States, 535 F.2d 1339 (Fed. Cir. 2008) ..... 7, 8, 9

Sergent Mech. Systems, Inc. v. United States, 34 Fed. Cl. 505 (1995) ..... 19, 20

Serralles v. United States, 46 Fed. Cl. 773 (Fed. Cl. 2000) ..... 9

## STATUTES

41 U.S.C. § 605(a) ..... 5, 6, 9, 12, 13

41 U.S.C. § 605(b) ..... 17

41 U.S.C. § 607(e) ..... 12, 14, 15

48 C.F.R. § 15.407-1 ..... 14

48 C.F.R. § 33.211(a) ..... 10

48 C.F.R. § 4.80 ..... 14

## RULES

Rule 12(b)(1), United States Court of Federal Claims ..... 1

## OTHER AUTHORITIES

Inter-Continental Equip., Inc., ASBCA No. 36807, 37-2 B.C.A. ¶ 26,708, at 132,863 ..... 4

Motorola, Inc., ASBCA No. 46785, 95-2 B.C.A. ¶ 27,645 ..... 7

## REGULATIONS

FAR § 15.407-1 ..... 14, 16, 19

FAR § 32.610 ..... 6

FAR § 33.211 ..... 4, 6, 7, 9, 10, 16, 19

FAR § 4.801 ..... 14, 16, 19

## I. **INTRODUCTION.**

The responsive submission filed by the Government attempts to use "slight of hand" to obscure the numerous glaring issues raised in SALTS'[1] motion to dismiss, including the lack of finality of the March 14, 2007 decision of the Contracting Officer. The Government's response is unsupported by competent evidence and instead relies of speculation regarding the Contracting Officer's acts or omissions. Further, the Government has not carried its burden of proof to rescue its counterclaims from dismissal. SALTS will not attempt to re-hash its entire argument, but instead, will attempt to address the most glaring errors contained in the Government's response. As discussed below, SALTS' motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims is due to be granted.

## II. **CHRONOLOGY OF EVENTS.**

SALTS provides the following chronology of relevant events for purposes of this reply.

1. The contracting officer at the time SALTS began performance under the not-to-exceed ("NTE") contract in 1999 was Gregory Wilson ("CO Wilson").

2. SALTS began performance on a NTE because of the immediate need to acquire the solicited generators, and as a result of the Government's failure to definitize the agreement after a number of submissions by SALTS over an extended period of time (see doc. no. 1 at ¶¶ 30-37). In all of these submissions over many months, the exchange

[1] Unless otherwise defined herein, all capitalized words or phrases have the same meaning as ascribed to them in the memorandum of law in support of SALTS' motion to dismiss pursuant to Rule 12(b)(1).

rate proposed to be utilized in performance of the subcontract with Lechmotoren never changed, i.e., $1 US = 1.5 DM.

3. Contract negotiations begin after an audit of Lechmotoren GmbH. These negations resulted in the reduction of the NTE contract price. The location of the vendors, the fact that different currencies may be used for various purchases, and the applicable exchange rates for those currencies were known and available at all relevant times to the Government. (See id. at ¶¶ 40-41). SALTS obtained foreign currencies to hedge against fluctuation in exchange rates, a risk it (not the Government) bore from the beginning of the contract. CO Wilson communicated and negotiated the definitized contract with SALTS.

4. In early 2002, the DCAA audit began (see id. at ¶ 43).

5. In April, 2002, SALTS provided a response to the DCAA and participated in an audit exit conference (see id. at ¶¶ 43-44).

6. The DCAA issued the Audit Report on September 19, 2002; however, SALTS did not receive the Audit Report until May 7, 2003. Charles Johnson ("CO Johnson") was the contracting officer that SALTS dealt with regarding the Audit Report and SALTS' request for additional information from the Government (see doc. no. 13 at App. 2 and 3).

7. On August 6, 2003, SALTS submitted its response to the Audit Report to CO Johnson which included reasons and argument related to the lack of defective pricing. At that time, CO Johnson was the contracting officer to whom SALTS' response was addressed (see id. at App. 2).

8. On August 25, 2003, SALTS submitted the declaration of Colonel Borchardt to CO Johnson (see id. at App. 3).

9. Almost 4 years later, without further substantive communications, on March 14, 2007, Tanya L. Davis, yet another new contracting officer, ("CO Davis") issued a decision without any analysis and in deviation of the clear regulations regarding issuance of a final decision. There is no evidence of any involvement of CO Davis prior to this date, no evidence of any review of the long and pecular history of the file or claim and SALTS past dealings with CO Wilson and CO Johnson, and no evidence of any reasoning or conclusions of CO Davis (see id. at App. 1). The letter purporting to constitute the "final decision" makes passing reference to the Contract itself and the DCAA audit, but does not incorporate by reference or adopt by any portion of either document, nor does it set forth independent findings or any reasoning.

10. On June 2, 2007, SALTS sent correspondence to CO Davis pointing out the numerous deficiencies in her decision and questioning the finality of the decision (see id. at App. 4); and

11. On June 27, 2007, the DCAA auditor sent correspondence to SALTS seeking data for CO Davis to address (post "final decision") SALTS prior responsive submissions of August 6, 2003 and August 25, 2003 (see id. at App. 5).

## III. ARGUMENT IN REPLY.

### A. The Contracting Officer's Letter Of March 14, 2007 Failed To Comply With The 41 U.S.C. § 605(a) Requirements, Including the Requirement That The Final Decision "State The Reasons For the Decision Reached."

Under the CDA, all contract claims, whether by a contractor against the Government or vice versa, must be submitted to the contracting officer for decision. The contracting officer's decision is subject to review. Thus, an important focal point is the finality and completeness of the contracting officer's decision. It is well settled that in order for a contracting officer's final decision to be valid, it must be based on the contracting officer's independent judgment and comply with the requirements set forth in FAR § 33.211(a). See, e.g., Inter-Continental Equip., Inc., ASBCA No. 36807, 37-2 B.C.A. ¶ 26,708, at 132,863 ("In order for a decision of a contracting officer to be valid it must be based upon his or her independent judgment.") (citing John A. Johnson Contracting Corp. v. United States, 132 Ct. Cl. 645, 132 F. Supp. 698 (1955)). While the contracting officer may obtain assistance from others, the decision must reflect her independent judgment after a review of the claim. A decision that does not comply with all applicable rules and regulations is not a valid, final decision. See England v. Sherman R. Smoot Corp., 388 F.3d 844, 854 (Fed. Cir. 2004) (a contracting officer is not entitled to the benefit of any presumption arising from the contracting officer's decision).

The Contract Disputes Act of 1978 requires a contracting officer, when issuing a final decision, to state the reason for her decision. Specifically, the CDA provides, in pertinent part, as follows:

> The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. **The decision shall state the reasons for the decision reached,** and shall inform the contractor of his rights as provided in this chapter.

41 U.S.C. § 605(a) (emphasis added). The Government's response fails to establish that the purported final decision included the "reasons for the decision reached" by the Contracting Officer. The Government contends that:

> The basis for the contracting officer's final decision is set forth in March 14, 2007 letter sent to SALTS: "The post award audit revealed that due to defective pricing, payments were made to you through contract completion . . . This is the final decision of the Contracting Officer."

(Doc. no. 21 at 5). Of course "payments" were made to SALTS "through contract completion", the contract required them. What about the "payments" was improper or defective?

In the above text, the Contracting Officer simply reaches a legal conclusion—"due to defective pricing"—rather than state the basis or supporting rationale for such conclusion. A statement of the reasons supporting the Contracting Officer's legal conclusion would have included an analysis and discussion of the elements of defective pricing which appear nowhere in her "final decision." Moreover, if she had "stated the reasons," she would have provided a short explanation as to why she rejected the reasons and argument contained in SALTS' letter of August 6, 2003 that there was, in fact, no defective pricing. Similarly, if the Contracting Officer had "stated the reasons," she would have provided a short explanation as to why she rejected the declaration of Colonel Borchardt. The Government contends a demand for payment made by the

Contracting Officer that "[p]ursuant to the terms and conditions outlined in the contract and in accordance with FAR 32.610, the Government hereby makes a demand for payment of excess profits of $7,379,180 and interest due through March 31, 2007 in the amount of $3,126,896, for a total amount due of $10,506,076" is sufficient to meet the Contracting Officer's obligation to provide the basis and supporting rationale for her decision. (Id.)

The statement from the "final decision" relied on by the Government clearly does not comply with the FAR requirements for a final decision. Acknowledging the insufficiency of the demand for payment as meeting the legal obligations for a final decision, the Government argues that then it can rely on the Audit Report. The Government contends in its response that:

> In addition, the contracting officer referenced the Defense Contract Audit Report No. 23191-2001S4200002 ("Audit Report) in the opening line of her letter. … Thus, the final decision provides SALTS with a "reason[] for the decision reached" in accordance with 41 U.S.C. §605(a).

(Id. at 6).

To be sure, the Audit Report does not comply with FAR § 33.211. Regardless, the Government would have the Court believe that a contracting officer can comply with her duty under 41 U.S.C. § 605(a) to "<u>state</u> the reasons for the decision reached" merely by identifying the existence of a DCAA audit report. The contents of a DCAA audit report might provide reasons, but these reasons were never <u>stated</u> or adopted as such in the final decision. Therefore, the Contracting Officer did not comply with 41 U.S.C. § 605(a) to "<u>state</u> the reasons for the decision reached."

The Government's entire argument in response is built on the premise that it can somehow rely upon the Audit Report to comply with the Contracting Officer's obligations under FAR § 33.211. The "final decision" does not expressly find that the Contracting Officer concurs in the DCAA position on the defective pricing issue. See Motorola, Inc., ASBCA No. 46785, 95-2 B.C.A. ¶ 27,645 (finding a demand for payment alone cannot expand the board's jurisdiction). Therefore, the Government must establish the Audit Report was adopted and incorporated by reference in the "final decision" to take the important step of establishing that the Audit Report meets the legal requirements of a final decision.

Recently, the Federal Circuit has addressed the requirements of incorporation by reference. In Northrop Grumman Information Technology, Inc. v. United States, 535 F.2d 1339, 1343-44 (Fed. Cir. 2008), the Federal Circuit noted that "[a]lthough in recent years we have discussed incorporation by reference in several opinions in patent cases . . ., we have not often heard a government contract appeal that turns on a question of incorporation by reference, and our case law in this area is somewhat sparse." (Citations omitted). The Federal Circuit stated the general rule that "[t]o incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents [identified]. Northrop Grumman Info. Tech., 535 F.3d at 1344 (citations omitted). Therefore, the incorporating language must be "express" and "clear," so as to leave no ambiguity about the identity of the document or the contents of such document being incorporated. Id.

The Federal Circuit concluded that the "language to incorporate extrinsic material by reference must explicitly identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate specific referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g. as background law or negotiating history)." Id. at 1345. The purported final decision of the Contracting Officer does not adopt and incorporate the Audit Report by reference. The "final decision" states that "[r]eference is made to the [AMCOM] Contract DAAH01-96-G-0001 D.O. 0004, which was awarded March 29, 2000, and the [DCAA] [p]ost award [Audit Report] dated September 19th 2002, Subject: Defective Pricing." This language does not even purport to adopt or incorporate by referenced any portion of the DCAA Audit and, therefore, does not satisfy the requirements related to adopting and incorporating by reference extraneous documents to the "final decision." See id.

The Contracting Officer did not use "widely-used and judicially-approved language of incorporation, such as 'is hereby incorporated by reference' or 'is hereby incorporated as though fully set forth herein.'" Id. at 1346. The "reference" in the Contracting Officer's decision appears to simply reference materials relevant to the decision, such as the Contract and Audit Report. However, it does not expressly adopt or incorporate either document into the decision of March 17, 2008. The "reference" to the Audit Report is hardly the type of clause that should be read as incorporating fully into the decision an extrinsic document such as the Audit Report.

It can only be concluded from the absence of such explicit language that the Contracting Officer did not intend to incorporate it by reference. See id. at 1347 (citing Serralles v. United States, 46 Fed. Cl. 773, 785 (Fed. Cl. 2000) ("[T]he incorporating document must not only refer to the incorporated document, it must bring the terms of the incorporated document into itself as if fully set out."). Indeed, the Government has not provided any competent evidence to the contrary. Certainly, without the Audit Report, the Contracting Officer's decision fails to meet the FAR requirements for finality. Even if it were assumed that the Audit Report was incorporated into the decision, the Contracting Officer's decision fails to meet the finality requirements for other reasons discussed below.

**B. The Contracting Officer's Letter Of March 14, 2007 Fails To Comply With The FAR's Implementation Of The CDA, Which Requires The Final Decision To (1) State the Factual Areas Of Agreement And Disagreement, and (2) Provide Supporting Rationale For The Decision.**

The CDA requires a final decision "state the reasons for the decision reached." 41 U.S.C. § 605(a). In implementing 41 U.S.C. § 605(a), FAR § 33.211(a) requires a contracting officer to prepare a written decision that provides (1) a "[s]tatement of the factual areas of agreement and disagreement" and (2) a "[s]tatement of the contracting officer's decision with supporting rationale."

The Government's response does not (because it cannot) establish that the Contracting Officer complied with FAR § 33.211(a). The cases the Government relies on and the argument in its response relate to FAR § 33.211(a)(1-3), not FAR § 33.211(a)(4)(i through v). The Government's response does not establish that the

Contracting Officer complied with FAR § 33.211(a)(4). Specifically, under the heading entitled "The Final Decision Is In Accordance With 48 C.F.R. § 33.211(a)," the Government argues:

> A contracting officer's decision asserting a Government claim is final if it determines both liability and damages. … Because SALTS can not dispute that the contracting officer's final decision contains language announcing that it constitutes a final decision and determined both liability and damages, SALTS's contentions the contracting officer's final decision is not valid.

(Id. at 8-9).

SALTS concedes that FAR § 33.211(a) requires a final decision to include a determination of both liability and damages. The Government conveniently overlooks, however, that FAR § 33.211(a) <u>also</u> <u>requires</u> that a final decision address "<u>the factual areas of agreement and disagreement</u>" and provide "<u>supporting rationale</u>." The Government's response does not identify where in the "final decision":

- The Contracting Officer disagrees with the response and argument contained in SALTS letter of August 6, 2003 establishing that there was no defective pricing;
- The Contracting Officer disagrees with the explanation in the Colonel Borchardt declaration establishing that there was no defective pricing;
- The "supporting rationale" for the Contracting Officer's apparent decision that SALTS response and argument in its letter of August 6, 2003 lacked merit; or
- The "supporting rationale" for the Contracting Officer's apparent decision that the explanation in Colonel Borchardt's declaration lacked merit.

Understandably, the Government makes no attempt to address these matters because the "final decision" and the Audit Report fail to address these issues. Instead, the Government contends as follows:

> In any case, even if more were required than a determination of liability and damages, in her final decision, when she indicated that, "due to defective pricing," SALTS had received "excess profits" and, therefore, AMCOM is demanding repayment of those profits. Pl. App. 1. As further "supporting rationale," the contracting officer made two references in her letter to the Audit Report, which gave a detailed description of SALTS's defective pricing practices. Id.; Def. App. 1 at 4-6. Thus, the rationale for [CO Davis'] decision was clear.

(Id. at 9).

Again, the Government would have the Court believe that the Contracting Officer provided supporting rationale by simply asserting a legal conclusion that defective pricing existed. The Government confuses the summary announcement by the Contracting Officer that SALTS is "liable" with the actual requirement to provide the basis for such a conclusion. The Government hopes the lack of any supporting rationale for the Contracting Officer's conclusion will get "lost in the weeds" and the Court will not look past its conclusory statement that "the rationale for [CO Davis'] decision was clear." (Id.) The "clear" rationale for the Contracting Officer's decision cannot be found within the four corners of the final decision.

### C. <u>The Government's Notion That The Requirement In 41 U.S.C. § 605(a) To "State The Reasons For The Decision Reached" Requires Only A Cursory Response Is Inconsistent With The Intent Of The CDA To Create An Administrative Record</u>

Among the purposes of the CDA is to "provide to the fullest extent practicable, informal, expeditious, and inexpensive resolution of disputes." 41 U.S.C. § 607(e). A final decision that explains where the Government agrees and disagrees with the contractor and the rationale for the disagreement establishes an administrative record. Without such an administrative record, a contractor has no recourse but to initiate litigation and pursue extensive discovery before learning where the Government disagrees with the contractor and the rationale for the disagreement. Therefore, the administrative record of a final decision is supposed to consist of "the reasons for the decision reached." 41 U.S.C. §§ 605(a). This thoroughness of the administration record promotes "informal, expeditious and inexpensive resolution of disputes." 41 U.S.C. § 607(e).

The importance of a final decision in the dispute resolution process is articulated in the frequently cited decision of <u>New York Shipbuilding Corporation v. United States</u>, 180 Ct. Cl. 446 (1967). In that case, the Court of Claims observed the following regarding the right of a contractor to a proper final decision:

> [T]he defendant, not the contractor, has circumvented that provision of the contract by breaching the agreement to render a proper and timely initial determination. By this rupture of the contract defendant has lost its right to insist upon administrative findings and an administrative decision.

<u>New York Shipbuilding</u>, 180 Ct. Ct. at 438.

Here, SALTS has been wrongfully deprived of administrative findings because CO Davis' cursory decision fails to state where she disagrees with SALTS and does not provide any rationale for her decision to reject the arguments raised by SALTS. This failure on the part of CO Davis is contrary to both the consistent teachings of federal courts, as well as the CDA:

> Nor can we agree that insistence on a decision by the contractual official is hypertechnical or unrealistic. It may be that, in some instances, the 'reality' is that the designated individual merely rubber-stamps a subordinate's or superior's findings, but we must presume that the parties intend otherwise-that they desire that in the end he put his own mind to the problems and render his own decisions. That has been the consistent teaching of this court in the past (see the opinions cited in footnote 5, infra) and we shall not today sanction an erosion of responsibility by holding that it makes no difference whether or not the chosen officer does his work. Similarly, the existence of boards of contract appeals should not be used to weaken the contracting officer's (the initial decider's) obligation. The appellate hearing may be de novo, but a proper and conscientious first decision is still important-it may go for the contractor and thus obviate the need for an appeal; in any event the fact of an adverse decision in the first instance puts the burden on appeal upon the contractor; and the appellate board may in some areas rely on the contracting officer's expertise or judgment.

Id. at 435.

Just as the court in New York Shipbuilding would not "sanction an erosion of the responsibility" to issue "a proper and conscientious first decision," so too this Court should not sanction such an erosion of "a proper and conscientious first decision" by allowing a contracting officer to be derelict in her duty to "state the reasons for the decision reached." 41 U.S.C. § 605(a).

The Government argues that "48 C.F.R. §§ 4.801 and 15.407-1 are not relevant here." (Doc. no. 21 at 13). The Government is mistaken. As explained in New York Shipbuilding, the purpose of a final decision is to provide an administrative record. A complete administrative record advances the purpose of the CDA to "provide to the fullest extent practicable, informal, expeditious, and inexpensive resolution of disputes." 41 U.S.C. § 607(e).

The subject of FAR § 15.407-1 is "Defective cost or pricing data." FAR § 15.407-1(d) states that the "contracting officer shall prepare a memorandum documenting both the determination and any corrective action taken as a result." FAR § 15.407-1(d) further states that "a copy of the memorandum or other notice of the contracting officer's determination shall be provided to the contractor."

FAR § 4.801 identifies the minimum requirements for the detail that should have been contained in the Contracting Officer's memorandum required by FAR § 15.407-1:

> (b) The documentation in the files (see 4.803) shall be sufficient to constitute a complete history of the transaction for the purpose of --
>
> (1) Providing a complete background as a basis for decisions at each step in the acquisition process;
> (2) Supporting actions taken;
> (3) Providing information for reviews and investigations; and,
> (4) Furnishing essential facts in the event of litigation or congressional inquiries.

Id.

Simply put, the reason that FAR § 4.801 and § 15.407-1 are relevant is because they require the contracting officer to establish the administrative record to support the final decision. Without such an administrative record, a contractor has no recourse but to

initiate litigation and pursue extensive discovery before obtaining essential information such as where the contracting officer disagrees with the claim and the rationale for the disagreement. Further, these FAR sections effectuate the purpose of the CDA to "provide to the fullest extent practicable, informal, expeditious, and inexpensive resolution of disputes." 41 U.S.C. § 607(e).

### D. The Contracting Officer Did Not Put Her "Own Mind To The Problem And Take Ownership Of All Determinations."

In CEMS, Inc. v. United States, 65 Fed. Cl. 473 (2005) the Court granted attorney fees under the Equal Access To Justice Act because the "contracting officer failed to 'put his own mind to the problems,' and to take ownership of all the determinations including the final contracting officer's opinion." CEMS, 65 Fed. Cl. at 479 (quoting New York Shipbuilding Corp. v. United States, 180 Ct. Cl. 446, 460, 385 F.2d 427 (1967)). As shown below, CO Davis did not put her own mind to the problems and did not take ownership of the determinations.

In CEMS, the Court determined that "it is apparent from the contracting officer's testimony that he and his subordinates relied almost entirely on government sources in making determinations for the COFD, and gave little, if any, consideration to evidence submitted by CEMS." Id. The facts in CEMS are conceptually indistinguishable from the present facts. One is left to guess whether CO Davis relied almost entirely (if not entirely) on the DCAA Audit Report (or whether she read it at all) and gave little, if any,

consideration to the impact and import of evidence submitted by SALTS.[2] In fact, the Government has not provided any evidence that CO Davis gave any consideration to the seven explanations in SALTS letter of August 6, 2003 or to Colonel Borchardt's declaration.[3] She has avoided, not taken, ownership.

On June 27, 2007, the DCAA auditor who prepared the Audit Report sent an e-mail to a SALTS employee stating:

> Ernie, if you remember, I am the auditor who performed the 2001 post award audit. I have been tasked by the requestor to address the seven assertions from SALTS's August 6, 2003 letter and the points made by William Borchardt from August, 5, 2003. In order to address SALTS' points I need to understand them more fully.

(Doc. no. 13 at App. 5). The June 27, 2007 e-mail from the DCAA auditor contained fourteen paragraphs of questions and comments concerning the reasons or argument raised in SALTS' August 6, 2003 letter as to why defective pricing did not exist. (Id.) The June 27, 2007 email from the DCAA auditor contained nine paragraphs of questions and comments concerning the explanation in Colonel Borchardt's declaration as to why currency fluctuations and the steps taken by corporations to protect themselves against currency fluctuations are not cost or pricing data. (Id.) The DCAA auditor sent a copy of

---

[2] It is beyond contention that she never seriously considered this information, if at all. This is evident by her tacit admission in contacting the DCAA auditor after issuance of the purported "final decision" for his input on the reasons and argument contained in the August 6, 2003 letter, as well as the Colonel Borchardt declaration, and the contact by the DCAA auditor with SALTS to get more information with which to communicate with the Contracting Officer.

[3] The evidence would have existed if CO Davis had complied with her duty under FAR § 33.211, FAR § 4.801, and FAR § 15.407-1.

his June 27, 2007 e-mail to "Davis, Tanya Ms CIV USA AMC," the Contracting Officer who issued the "final decision." (Id.)

On July 13, 2007, SALTS responded to the DCAA auditor's e-mail as follows:

> Thank you for your e-mail of June 27, 2007. It is clear that you have put a lot of work into your questions/comments. Although it will take some work on our part, SALTS is prepared to respond to your seven pages. However, before doing so, it would seem prudent to make sure neither of us is wasting his time.
>
> On March 14, 2007 the Contracting Officer, [CO] Davis, issued a final decision on this matter. According to the law, "the contracting officer's decision on the claim shall be final and conclusive." 41 U.S.C. § 605(b). In short, because [CO Davis] has already issued a final decision, anything that you or I now do for [CO Davis] would appear to be a waste of time since her decision is "final and conclusive."
>
> [CO Davis] has the prerogative to rescind her final decision. If she were to do so, it would make sense for the two of us to pursue your questions/comments. Then, after she has reviewed your painstaking input, she can re-issue her decision.
>
> SALTS' letter dated June 2, 2007 suggested to [CO Davis] that her final decision appeared premature. SALTS requested [CO Davis] to re-issue her final decision after she had acquainted herself with all the facts.
>
> Among the facts that SALTS urged her to consider are, the seven assertions why the Government has no basis to allege that SALTS provided defective cost or pricing data (Ref: SALTS letter dated Aug. 6, 2003 to your predecessor, [CO Johnson) and a declaration [CO] Johnson received from Colonel William Borchardt, USAF (Ret.) on August 27, 2003 setting forth two explanations why the means SALTS sought to protect itself from currency fluctuation was not cost or pricing data.
>
> To summarize, if [CO Davis] agrees to rescind her March 14, 2007 final decision, I would be delighted to commit the

> resources to answer your questions/comments. However, at this time SALTS is still waiting for a response to its June 2, 2007 letter to [CO Davis].

(Id. at App. 6).

In a letter dated July 17, 2007, the Contracting Officer replied to SALTS' letter of June 2, 2007. The Contracting Officer's letter states:

> It is the **<u>Government's opinion</u>** that the final decision issued by the referenced March 14, 2007 letter, fully met the requirements of the Contract Disputes Act, and the Federal Acquisition Regulations, concerning the time for appeal of the Contracting Officer's final decision on this matter.

(Id. at App. 7)(emphasis added). Simply put, if CO Davis had taken ownership of the determinations, she would have done the following:

1. considered the SALTS' material prior to rendering her so-called final decision;
2. having failed to do so and having had theses deficiencies brought to her attention, agreed to rescind her final decision;
3. obtained the information from the auditor she requested prior to issuing a decision;
4. with the input auditor, assessed the merits of the seven arguments made by SALTS in its August 6, 2003 letter; and
5. with input from the auditor, assessed the merits of Colonel Borchardt's declaration.

Because CO Davis did not perform the above five steps, she has not taken ownership of the determinations. The March 14, 2007 letter from CO Davis to SALTS does not fulfill either the spirit or letter of the law. [Government says met letter, forget spirit] Because CO Davis failed to put her own mind to the problems and failed to take ownership of all the determinations, she has not issued a valid final decision for purposes of granting jurisdiction to this Court.

**E. <u>The Government's Argument That "SALTS Has Not Provided A Basis For Its Contention That The Contracting Officer's Decision does not Reflect Her Own Independent Analysis, Reasoning, Or Determination" Cannot Withstand Scrutiny.</u>**

The Government argues that "SALTS has not provided a basis for its contention that the contracting officer's decision does not reflect her own independent analysis, reasoning, or determination." (Doc. no. 21 at 11). It is not SALTS obligation to establish CO Davis' independent analysis, reasoning, or determination. The burden is on the Government to provide evidence to support a finding of jurisdiction through a final decision. From the record before the Court, all evidence supports SALTS contention that she did not, in fact, review, analyze or provide a valid, final decision regarding the claim. As noted, nowhere in the record before the Court can or does the Government establish that CO Davis gave any consideration to the reasons and argument raised by SALTS regarding the lack of defective pricing or that she gave any consideration to Colonel Borchardt's declaration which likewise establishes that there was no defective pricing.[4] The Court is asked to presume an analysis that is clearly not evidenced anywhere in the administrative record. The Government asks the Court to believe (without any evidentiary support) that a Contracting Officer (CO Davis), who had not previously been involved in the process, issued a "final decision" compliant with FAR § 33.211(a) but it cannot provide any evidentiary support whatsoever to establish that assertion.

In <u>Sergent Mech. Systems, Inc. v. United States</u>, 34 Fed. Cl. 505 (1995), the Court held:

---

[4] If CO Davis had, in fact, given such consideration, it should have been documented pursuant to FAR § 33.211, FAR § 4.801, and FAR § 15.407-1.

> [T]he court cannot countenance the CO's admitted failure to give any consideration at all to Sergent's arguments and exhibits. By reviewing only the records produced by the government, Mr. Eversole failed to fulfill his duty to be unbiased and impartial.

Sergent Mech. Systems, 34 Fed. Cl. at 523.

The holding in Sergent Mech. Systems is equally applicable to the case at bar. Where a contracting officer only reviews the record produced by the Government, the contracting officer fails to fulfill her duty to be unbiased and impartial. It is undisputed that CO Davis simply reviewed the record produced by the Government (i.e., the Audit Report) and failed to consider the information and argument contained in SALTS letter of August 6, 2003 and Colonel Borchadt's declaration. Just as the contracting officer in Sergent Mech. Systems violated his duty to be unbiased and fair, so too CO Davis has violated her duty to be unbiased and unfair.

## IV. CONCLUSION.

For the above reasons (as well as the reasons set forth in SALTS' motion to dismiss and supporting memorandum), the Government's counterclaims are due to be dismissed for lack of jurisdiction.

Dated: September 8, 2008.

**s/ Roderic G. Steakley**
Roderic G. Steakley

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2008, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David L. Silverbrand
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

**s/ Roderic G. Steakley**
Roderic G. Steakley